## WELLS *v.* THE STATE.

1. An indictment for selling liquor without a license, which substantially conforms to the terms and language of the Penal Code, § 431, is not demurrable upon the ground that it does not sufficiently set out the act constituting the alleged offense; nor on the ground that it fails to state the kind, quantity, or "the value of the intoxicants sold, and to whom they were sold, and whether they were sold on the premises and drunk on the premises." *Sweeney* v. *State,* 16 *Ga.* 467; *Stringfield* v. *State,* 25 *Ga.* 474; *Williams* v. *State,* 89 *Ga.* 483;

*Redding* v. *State*, 91 *Ga.* 231; *Newman* v. *State*, 101 *Ga.* 534; *Hancock* v. *State*, 114 *Ga.* 439.

2. An indictment, founded upon the Penal Code, § 431, which charges generally the sale of wine without a license, is not demurrable because it does not allege that the same was not domestic wine. *Hancock* v. *State*, supra.

3. A demurrer to an indictment, which alleges that separate and distinct offenses, for which separate and distinct penalties are provided, are improperly joined therein, without indicating what such separate and distinct offenses are, presents no question for determination by the court.

4. The sale of intoxicating liquors not being prohibited in Screven county, one can, in that county, commit the offense of selling such liquors without a license.

5. Even if the local act of March 2, 1874 (Acts 1874, p. 403), is still of force in Screven county, the indictment was properly based upon the Penal Code, § 431.

6. The questions made by a plea in abatement to an indictment which has been transferred from a superior to a city court are triable in the latter court, unless some issue arises thereunder which involves the correctness of the minutes of the superior court.

7. When in the trial of a criminal case before a judge, without a jury, a plea in abatement is filed, and no evidence is offered in support of the plea, the proper practice is to enter a judgment overruling such plea; but where, instead of doing this, the judge passes an order striking the plea, such technical error affords no cause for a reversal of the judgment in the case.

8. While it would have been more in accordance with good practice for the State to have traversed the plea in abatement and thus formed an issue thereon, yet, as the court afforded the accused a fair and full opportunity to introduce evidence in support of its allegations, which he refused to do, announcing that he "would rely upon the legal proposition that said court had no authority to try said plea," the failure of the State to traverse the plea is not cause for reversing the judgment.

9. The allegations contained in a plea in abatement to an indictment, although sworn to, are not to be taken as being true because such plea is not traversed; they must be supported by evidence before they can be sustained.

Submitted July 22, — Decided August 14, 1903.

Indictment for selling liquor without license. · Before Judge Overstreet. City court of Sylvania. June 8, 1903.

*Thomas L. Hill* and *E. K. Overstreet*, for plaintiff in error.

*H. A. Boykin, solicitor*, contra.

FISH, P. J. An indictment was found by the grand jury of Screven county against J. Rosser Wells, charging him with a misdemeanor. The case was transferred to the city court of Sylvania, where it was tried, and the defendant was convicted. The indictment charged, that on a day named, in the county of Screven, the accused, " without license and without taking the oath prescribed by law, and without license from the proper authorities of said

county, and without license from the corporate authorities of any town or city where by law authority to grant license is vested in such corporate authorities, did sell, for a valuable consideration, a certain quantity of brandy, rum, gin, whisky, and spirituous liquors and mixture of spirituous liquors, and did sell by retail, for a valuable consideration, a certain quantity of wine, contrary to the laws of said State," etc.     The defendant demurred to the indictment upon ten grounds, and the demurrer was overruled.     He also filed a plea in abatement, alleging that, for reasons named, the grand jury which found the indictment was not a lawful grand jury, and hence the indictment was void.     This plea was stricken by the judge of the city court, the order striking the plea being as follows :  " Upon call of the above-stated case, counsel for defendant having announced ready and said defendant having failed to prove the allegations in said plea, and having announced by defendant's counsel that he would not make proof of the allegations in said plea of abatement, and having refused, after announcing ready, to proceed with said case or the proper proofs of said plea, and said attorney for defendant announcing to the court that he would not do anything, but would rely upon the legal proposition that said court had no authority to try said plea ; and it further appearing that said J. R. Wells was present in court: ordered that said plea in abatement be and the same is hereby stricken.     This June 8th, 1903. "     The defendant duly excepted to the overruling of the demurrer, and also excepted to the order striking the plea.

1, 2.     Several grounds of the demurrer are controlled by previous decisions of this court, and are sufficiently dealt with in the first and second headnotes, where such decisions are cited.

3.     One of the grounds of the demurrer was that " separate and distinct " offenses, for which " separate and distinct penalties are provided," are improperly joined in the indictment; but the demurrer fails to even indicate what these " separate and distinct" offenses are ; and for this reason, if for no other, this ground was fatally defective.     We may say, in passing, that the brief of counsel for the plaintiff in error also fails to indicate what these separate offenses are.     We are at a loss to know what " separate and distinct " offenses counsel had in mind.

4.     One ground of the demurrer evidently intended to raise the question as to the authority of anybody to grant licenses for the

sale of intoxicating liquors in Screven county ; and counsel for the plaintiff in error rightly contend that if it was legally impossible for one to get a valid license for the sale of such liquors in that county, then no lawful conviction could be had under an indictment for selling such liquors in such county without a license. Counsel admit that under the act of March 2, 1874 (Acts 1874, p. 403), "a license could have possibly been obtained" to sell such liquors in Screven county, provided that act was not repealed by the act of August 11, 1881 (Acts 1880–1, p. 593). We do not perceive how it can be reasonably contended that under the provisions of either of these acts it is legally impossible for one to get a license for the sale of intoxicating liquors in Screven county. Neither of the acts prohibits the sale of such liquors in that county, nor the granting of licenses for such a purpose. The act of 1874 provided how licenses to sell intoxicating liquors in Screven county should be obtained, and required the applicant for such a license to obtain, and present to the person having authority to issue the license, "the written consent to the granting of said license" of "two thirds of the citizens, freeholders, living within three miles of the place at which the applicant [proposed] to sell." The act of 1881 provided that no license to sell spirituous or intoxicating liquors in the county of Screven should be granted until the applicant therefor obtained the written consent of the entire grand jury sworn in for the spring term of the superior court of the county, and presented the same to the officers of the county authorized by law to grant such licenses, and that such written consent must state that the grand jury had examined the character of the applicant and consented to a license being granted to him upon compliance with the other requirements of the law. It further provided that before any license should be granted the applicant should pay to the officers authorized by law to grant the license the sum of ten thousand dollars, and that any license granted without the payment of said sum and a full compliance with all the requirements of the act and the general law upon the subject should be null and void. It also provided that any person selling such liquors in violation of its provisions should be guilty of a misdemeanor and punished as provided in section 4565 of the Code of 1873. However onerous the statutory requirements for obtaining a license may be and however difficult it may be to com-

ply with them, it can not be said that it is legally impossible to procure a license, so long as the statute does not prohibit the issuing of such licenses.     On the contrary, when a statute provides how a license may be obtained to do a given thing, it impliedly authorizes such license to be issued when the statutory requirements have been complied with.     The practical effect of a statute providing the terms and conditions upon which a license to sell liquors in a given county can be obtained may be to prevent the lawful sale of such liquors in that county ; but the practical effect of a statute is one thing and its legal operation is another.     The statute of 1881, the provisions of which in reference to obtaining license to sell intoxicating liquors in Screven county are much more onerous than those of the act of 1874, does not prohibit the sale of such liquors in Screven county ; and even viewing the question from its purely practical side, this court can not say that no license to sell such liquors can be obtained in that county. Whether the local act of 1874 or the local act of 1881 is operative in Screven county, the law does not prohibit the granting of licenses to sell intoxicating liquors in that county ; and hence there is no merit in the contention that the indictment charges the accused with no offense against the criminal laws of this State.

5. Counsel for the plaintiff in error contend that the act of 1874 is still of force in Screven county, and, therefore, " the indictment should have been framed under the local laws applicable to Screven county ; to wit, act of 1874, page 403." Counsel seem to lay great stress upon this contention.     We must confess, however, that we do not see any force in it.     There is absolutely nothing in the act of 1874 which makes it a penal offense to sell intoxicating liquors in Screven county without a license.     The only penal clause in the act is one making it a misdemeanor for any person to issue a license in violation of its provisions.     It is unnecessary, therefore, to determine whether if there were a penal provision in the act, of the character first above indicated, conflicting with the general law of the State, prohibiting and making penal the selling of such liquors as those named in the indictment, without a license, it would be valid.     The grounds of the demurrer not dealt with above were properly overruled, and are so obviously without merit as to require no discussion at our hands.

6. The plea in abatement attacked the legality of the grand jury which found the indictment, upon the grounds : that the list of grand jurors for the county was unlawfully made up and the names constituting such list unlawfully placed in the grand-jury box, in that the jury commissioners of Screven county were not present at the time the same was done, and did not so certify as the law directs; that no book containing a list of the grand jurors in alphabetical order was kept in the office of the clerk of the superior court ; that the grand-jury list did "not contain two fifths of the whole number of upright, intelligent, and qualified men," from which to draw a grand jury ; that three named persons " and others were not properly made and drawn and sworn in as grand jurors, some of which were excused from attendance upon court whose names appear in the indictment, and were not present at the time said indictment was returned." When counsel for the accused refused to offer any evidence whatever in support of this plea, it was stricken by the court, and in the bill of exceptions error is assigned upon this ruling. The contention of counsel for the plaintiff in error is that this plea could not be tried in the city court, but that when the plea was filed the case should have been returned to the superior court from whence it came, which alone had jurisdiction to try the issues made. In so far as this plea properly presented any questions for trial, it was triable in the city court. There was nothing in the plea which required a trial in the superior court. Counsel for the plaintiff in error cite the case of *Kneeland* v. *State, 63 Ga.* 641, where it was held: " While parol evidence may be admissible to correct a mistake in entering the names of grand jurors on the minutes of the court in which an indictment was found, yet where the indictment was found in the superior court and transmitted to a city court for trial, parol evidence of such a mistake would not be admissible in the latter court under a plea in abatement. The proper course would be to examine the minutes of the superior court, and, if it appears therefrom that the indictment has not been found by grand jurors whose names appear thereon, then to suspend the hearing of the case until the minutes of the superior court in which the indictment was found shall be corrected, if it can lawfully be done, and if not, the indictment should be quashed by the court in which it was found." Of course, one court can not correct the minutes of another; and when in the course of a trial in

a city court a question is made involving a consideration of the minutes of a superior court, and the point is reached where the question made can not be determined by an inspection of such minutes, but parol evidence is offered to alter, explain, or correct them, the question should be referred to the superior court, which alone has authority to correct its own minutes. In the case cited the accused pleaded that three of the grand jurors whose names appeared in the indictment were not qualified to act, their names not being in the grand-jury box nor on the list of grand and petit jurors prepared in accordance with the statute. The State offered evidence for the purpose of showing that there was a mistake in entering the name of a grand juror in the indictment, and the judge of the city court heard evidence upon this question and passed upon it, which this court, as we have seen, held to be error. There was nothing in the plea filed in the present case which required more than an inspection of the minutes of the superior court, and as to most of the plea even an inspection of such minutes was not involved. The law does not require the list of the grand jurors selected and placed in the grand-jury box by the jury commissioners of a county to be entered upon the minutes of the superior court. It does require the clerk of the superior court to "make out, in a book, lists of the names respectively contained in the grand-jury box and in the traverse-jury box, alphabetically arranged, and place the book in his office, after the lists therein have been certified by the clerk and commissioners to contain, respectively, all the names placed in the jury boxes." This book is no more a part of the minutes of the superior court than is a book wherein the clerk keeps the records of deeds or mortgages. So, the question made by the attack on the list of the grand jurors placed in the grand-jury box of Screven county was not one which had to be referred to the superior court. If the very general and indefinite allegation that certain persons were not properly drawn and sworn in as grand jurors is to be treated as being sufficient to raise the question of their qualification to sit as grand jurors when this indictment was found, the question whether they were duly drawn and properly sworn in could, as the case stood when the court struck this plea, have been determined by a mere inspection of the minutes of the superior court, there being nothing before the court which called in question the correctness of such minutes.

The same may be said with reference to the still more vague and indefinite allegation that some unnamed grand jurors, whose names appear upon the indictment, were excused from attendance upon the court and were not present at the time the indictment was returned. It is hardly necessary to say that the allegation that the grand-jury list of the county did "not contain two fifths of the whole number of upright, intelligent, and qualified men " raised no issue for trial in either the superior or the city court.

7. While the court committed a technical error in striking the plea, instead of entering a judgment overruling it, which would have been the proper practice, as the judge, who was hearing the case without a jury, should have passed upon the merits of the plea, finding that it was unsupported by evidence, yet, as the same practical result was reached by the course pursued, the mere technical error committed is not cause for a reversal of the judgment.

8. It is also stated in the bill of exceptions, but not in the order striking the plea, that the "defendant declined to go into a trial of said plea in its then present shape, because it was not properly traversed or denied." While it would have been more in accordance with good practice for the State to have traversed the plea in abatement and thus formed an issue thereon, yet no right of the accused was injuriously affected by the failure of the State so to do; for the court afforded the defendant a fair and full opportunity to introduce evidence in support of the allegations contained in this plea, and his counsel announced " that he would not make proof of the allegations in said plea in abatement," that "he would do nothing, but would rely upon the legal proposition that said court had no authority to try said plea." It is evident, therefore, that the failure of the State's counsel to traverse the plea did not prevent the accused from supporting its allegations by evidence, and it is further apparent that even if the plea had been traversed, the accused would have offered no evidence in its support, as he stood squarely upon the legal proposition that the city court had no authority to try the plea.

9. The contention of counsel for the plaintiff in error, that as the plea in abatement was sworn to and not traversed, the allegations of fact therein contained were to be taken as having been proved is unsound. The plea, whether traversed or untraversed,. could not be sustained without evidence to support it.

*Judgment affirmed. By five Justices.*