## 32715. STEPHENS *v.* THE STATE.

DECIDED FEBRUARY 6, 1950.

*Harris, Chance & McCracken,* for plaintiff in error.
*W. D. Lanier, Solicitor, Eugene M. Kerr,* contra.

MacINTYRE, P. J. The defendant was tried upon an accusation charging him with the abandonment of his twenty-month-old son, in that he was not furnishing sufficient food and clothing for the needs of the child. The trial resulted in his conviction and sentence. He moved for a new trial upon the general and three special grounds; the motion was overruled and he excepted.

1. Special ground 3 complains that the following excerpt from the court's charge intimated or expressed the opinion of the court that the child in question was in fact the child of the defendant, which was a question before the jury: "if you believe the defendant innocent of abandonment of his child—not leaving his child in a dependent condition." Viewed alone, this excerpt might well be taken to be an expression on the part of the court that the child in question was in fact the child of the defendant; but, when viewed in the light of the context in which the court used it, it is no longer subject to the criticism assigned. The court charged in this connection: "Now, gentlemen of the jury, if after a careful consideration of the evidence in this case, as applied to the law the court has given you in charge, you are convinced beyond a reasonable doubt that the child in question is the child of the defendant on trial and that the defendant

had abandoned the child in leaving it in a dependent condition in Richmond County, Georgia, he would be guilty of the offense of abandonment of child and you will so find with a verdict, the form of which would be: 'We, the jury, find the defendant guilty.' If on the other hand, you have a reasonable doubt springing from the evidence or want of evidence of the defendant's guilt, or if you believe the defendant innocent of abandonment of his child—not leaving his child in a dependent condition—*or if you believe that the child is not the defendant's child, if you are not convinced beyond a reasonable doubt that it is his child in spite of the presumption of law given you in charge, or if you don't believe it is the defendant's child because you are convinced by the evidence that it is not his child, the evidence the defendant has offered, in either of these events you will bring in a verdict of not guilty.*" The italicized portion of the above-quoted charge makes clear that the court expressed no opinion on the subject of the child's paternity, but gave a fair and just charge on the issues of the case. This ground is not meritorious.

2. Construing, as we must, the evidence most strongly in favor of the verdict of the jury, approved by the trial court, it appears that the defendant and the prosecutrix were married before the Probate Judge of Aiken County, South Carolina, on December 30, 1943. They returned to Augusta, Georgia, following the wedding and lived together as man and wife (had sexual intercourse) until January 13 or 14, 1944, at which time the defendant left the State to return to his post as a soldier in the Armed Forces. He returned to Augusta on a ten-day furlough the latter part of May at which time he and the prosecutrix again had marital relations. We shall not concern ourselves with these latter marital relations as the prosecutrix testified that she was already pregnant at that time. The child in question was born on November 17, 1944. Under this evidence the last possible coition between the prosecutrix and the defendant in January could have been on January 14, 1944. Therefore, as the child was born on November 17, 1944, if we assume a fruitful coition on January 14, a period of 308 days intervened between coition and parturition. There is no competent evidence of adultery on the part of the prosecutrix nor is there any evi-

dence of the defendant's impotency. He relies upon the protracted pregnancy of the prosecutrix as his only defense upon the question of his paternity of the child. "The duration of pregnancy, or period of gestation, is the interval in days between the time of impregnation and the beginning of labor. The normal period of gestation, according to the consensus of medical testimony, is approximately 9 calendar months—10 lunar months—or 280 days, calculated from cessation of the last menstruation. In the United States, the courts will judicially notice that a period of 9 calendar months [280 days] is the usual period of gestation. There is an abundance of medical authority recording exceptions to this general rule. Dr. Eden, well-known British obstetrician and gynecologist, has cited three pregnancies which lasted 323, 324, and 336 days. A series of 2378 pregnancies included 161 cases of prolonged pregnancy which lasted more than 300 days. The Lord Chancellor of England decided that if there was no proof of adultery, the child born 331 days after the husband went to war, was legitimate. In 782 cases of protracted pregnancy, some lasted 319, 324, 332, and 335 days. Dr. Joseph B. De Lee has said that length of pregnancy varies from 220 to 330 days, from the date of fruitful coitus." Schatkin, Disputed Paternity Proceedings (1st ed., 1947, pp. 349, 350.

Code § 74-101 provides: "All children born in wedlock, or within the usual period of gestation thereafter, are legitimate. The legitimacy of a child thus born may be disputed. Where possibility of access exists, except in cases of divorce from bed and board, the strong presumption is in favor of legitimacy, and the proof should be clear to establish the contrary." This presumption of legitimacy is one of the strongest and most persuasive known to our law. Lockwood v. Lockwood, 62 N. Y. Supp. 2d, 910; and to overcome such presumption our Code itself declares that the proof "should be clear to establish the contrary" where the possibility of access between the husband and wife exists. While this presumption was carried to absurd lengths in the early English cases which held the presumption a conclusive one, and this holding found support in even such distinguished jurists as the Lords Coke and Erskine, Georgia as early as Wright v. Hicks, 12 Ga. 155, adopted a more common

sense rule. Our Supreme Court, speaking through Judge Lumpkin, did not sanction the idea held by the English courts that, "Once the marriage is proved, nothing shall be allowed to impugn the legitimacy of the issue, short of the proof of facts showing it to be impossible that the husband could be the father." In this connection, Judge Lumpkin, in criticizing Lord Erskine's decision in the Banbury Peerage Case and Justice Wayne's decision in Mrs. Gaines' Case, 6 Howard 589 (47 U. S. 550, 12 L. ed. 553), said: "If he had said, that when *sexual intercourse,* instead of *marriage,* is once proved that nothing short of impossibility, in such case, shall impugn the legitimacy, the law would have been correctly stated. For, unless an impossibility is shown, neither father nor mother can tell who begat the child. But where sexual intercourse is merely presumed from the propinquity of the parties, a very different rule obtains; and it requires much slighter proof to rebut the presumption of paternity. And some courts have overlooked this most obvious distinction." 15 *Ga.* 160, 170. In the instant case the State proved post-nuptial intercourse between the defendant and the prosecutrix and that the child was born in wedlock some ten and one-half months [308 days] after their marriage. The State thereby established a prima facie case of the legitimacy of the child and of the paternity of the defendant. "The strong legal presumption came to wife's aid, and the court [would be] prone to decree legitimacy, even if it meant straining the natural laws of the duration of pregnancy" in the absence of clear proof to the contrary on the part of the defendant. Schatkin (1st ed.), p. 252. There is no evidence of adultery, as we have said, and the defendant relies solely upon the protracted pregnancy to establish that he was not the father of the child in question. This was a defensive matter which it was encumbent upon the defendant to establish to the satisfaction of the jury; that is, it was for the jury to determine whether or not the presumption of legitimacy had been overcome. Evidently the jury found that it had not been. But, even apart from the presumption in favor of legitimacy, when we take into consideration the evidence in this case, and the present state of medical knowledge and belief, it cannot be said as a matter of law that it is impossible that the defendant

is the father of the child. The evidence authorized the verdict. See *Steed* v. *State*, 80 *Ga. App.* 360 (56 S. E. 2d, 171).

3. The court fully and fairly charged the issues in the case and in the absence of a timely written request, it was not error for the court to fail to charge that the normal period of gestation, or duration of pregnancy, is nine months. Special ground 1 is without merit.

For the foregoing reasons the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*